IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )  Case No. 7:23-cr-00047 |
| DAMON TYLER MILLS, | ) |
| | ) |
| *Defendant.* | ) |

**RESPONSE TO THE DEFENDANT'S MOTION TO SUPPRESS CELLPHONE DIGITAL INFORMATION**

The United States opposes the defendant's motion to suppress cellphone digital information. (ECF No. 57). Because the digital information that the defendant seeks to suppress was seized pursuant to a validly executed search warrant, supported by probable cause, the defendant's motion to suppress should be denied. Additionally, should this Court find fault with the search warrant, the law enforcement officers acted in good faith when executing the warrant, particularly given they were investigating a recently committed homicide where several firearms and narcotics were located at the scene.

**I.    Relevant Background[1]**

On February 24, 2019, at approximately 9:00 p.m., officers responded to a disturbance with weapons call at 6491 Carefree Lane, an apartment in Roanoke County, Virginia. First responders found an individual, F.C., lying across the entryway to the apartment with multiple gunshot wounds. F.C. was ultimately declared deceased at the scene. He had two gunshot wounds, one to his abdomen and one to his head. Multiple individuals were located at the scene, including the

---

[1] The following information would have been known to officers at the time they obtained the search warrant at issue in the defendant's motion to suppress.

defendant, Tyler Mills. Each was read his/her *Miranda* rights and subsequently provided statements at the Roanoke County Police department.

An initial search warrant for the apartment was sworn out and executed, and, during the search of the apartment, officers located multiple firearms, several plastic containers of what they believed to be marijuana, additional quantities of personal-use marijuana on a dining room table, what they believed to be THC wax on the same table, marijuana smoking devices, other suspected illicit narcotics, several cell phones, and a laptop. Officers also recovered a bullet from the doorframe of the apartment's entrance and shell casings.

Interviews with the individuals at the scene were conducted that night and into the early morning hours of February 25, 2019. During the defendant's interview he told officers that Taylor Miles knocked on his door and he opened it. Once it was open, F.C. appeared from behind Miles, racked a pistol, and pointed it at him. The defendant then drew his own pistol, shot F.C. once, and then shot him a second time as F.C. began to fall to the ground. The defendant told officers that he knew Miles and had sold marijuana to her five or six times in the previous month while he had been living at that apartment. He said that F.C. was Miles's boyfriend and that F.C. had been with her on a few occasions when he had sold marijuana to Miles. The defendant admitted that, when he sold marijuana, he would flash his money in front of Miles and F.C. and that he believed F.C. was a washed-out drug dealer and potentially saw the defendant as an easy target.

When investigators spoke with Faith Perry, who had been with the defendant at the time of the shooting, she stated that Miles had knocked on the door and that the defendant opened the door. After the door was opened, Miles and the defendant had a brief conversation about the defendant not answering Miles's previous messages regarding narcotics. Then, F.C. appeared from behind Miles, pointed a gun at the defendant, and the defendant shot F.C. in the stomach. Then,

2

when F.C. was on the ground, he was reaching for his firearm and the defendant shot him again. Perry told investigators that the defendant sold marijuana and that she buys her marijuana from him. She also disclosed that she had received messages from Miles earlier in the day trying to obtain marijuana from the defendant.

The third eyewitness to the shooting was Taylor Miles who said that F.C. had picked her up from work that night, stopped at F.C.'s mother's house, obtained a gun, and began driving down Williamson Road in Roanoke. At some point, they pulled over and F.C. took control of the vehicle. During their ride to the defendant's apartment, the two argued over money, bills, and the gun. Miles stated she went to the defendant's apartment so that she could buy $50 of THC wax, which she had texted the defendant about earlier in the day but received no response. When Miles and F.C. arrived at the defendant's apartment, she knocked on the door and the defendant answered. F.C. came from behind Miles, she saw his gun, heard it click, and F.C. pushed her forward. Miles saw that the defendant had his gun in his waistband, which was consistent with her observations that he always had a gun. Miles said that the defendant and F.C. began to wrestle on the floor when she heard a shot go off and heard F.C. say, "oh shit." Miles then heard at least one more shot go off, and she called 911. Miles advised that she knew something was going to happen when she and F.C. were on their way to the defendant's apartment but did not know what it would be.

Ultimately the defendant's cellphone, among others, was seized the night of the incident and was later searched pursuant to a search warrant dated February 26, 2019. The cell phone data obtained from the defendant's cell phone is the subject of the defendant's motion to suppress. *See* ECF 57.

## II. LEGAL STANDARD

A motion to suppress challenging an issued warrant does not result in a de novo determination of probable cause by the reviewing court. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). Rather, "the task of a reviewing court is . . . only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Id*. This is a "highly deferential standard of review," which reflects "the purpose of encouraging recourse to the warrant procedure . . . ." *Simmons v. Poe*, 47 F.3d 1370, 1378 (4th Cir. 1995); *Illinois v. Gates*, 462 U.S. 213, 236–37 (1983).

A warrant is supported by probable cause if a judicial officer makes a "common-sense determination" that the warrant application "shows a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Jones*, 942 F.3d 634, 638 (4th Cir. 2019) (quoting *Gates*, 462 U.S. at 238). This probable cause standard is "not particularly demanding." *United States v. Ortiz*, 669 F.3d 439, 446 (4th Cir. 2012); *see also United States v. Orozco*, 41 F.4th 403, 408 (4th Cir. 2022) ("Probable cause is . . . not a high bar." (citation omitted)). It requires less proof than a preponderance of the evidence. *Ortiz*, 669 F.3d at 446; *see also United States v. Gondres-Medrano*, 3 F.4th 708, 714 (4th Cir. 2021).

In reviewing a warrant, judicial officers are entitled to rely on the inferences made by law enforcement officers in light of the officers' training and experience. *United States v. Matish*, 193 F. Supp. 3d 585, 602 (E.D. Va. 2016). Judicial officers are also entitled to make their own inferences, drawing on background knowledge that "inform[s] the judge's assessment." *Ornelas v. United States*, 517 U.S. 690, 699–700 (1996). And the inferences of both law enforcement officers and issuing magistrate judges are entitled to deference upon judicial review. *See id*. at 699 (counseling "due weight to inferences" by "resident judges and local law enforcement officers").

4

In addition, officers may rely on the good faith exception to the exclusionary rule, which holds that where officers rely on a duly issued, but later invalidated, warrant when carrying out a search "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). When a warrant is deemed invalid, the good faith exception applies where there is "sufficient indicia of probable cause so as not to render reliance on it totally unreasonable." *United States v. Bynum*, 293 F.3d 192, 199 (4th Cir. 2002). In effect, "a court should not suppress the fruits of a search conducted under the authority of a warrant, even a subsequently invalidated warrant, unless a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. at 195.

Further, in evaluating the reasonableness of an officer's reliance on the warrant, a court may consider certain information not specifically set forth in the affidavit. It is appropriate to consider "uncontroverted facts known to [the officer] but inadvertently not presented to the magistrate." *United States v. McKenzie-Gude*, 671 F.3d 452, 460 (4th Cir. 2011). That is, officers are deemed to have "acted with the requisite objective reasonableness" and in good faith, even if the warrant lacks sufficient probable cause, so long as they told the magistrate the additional facts that created probable cause, or at least knew of the additional facts and just inadvertently failed to include them in the affidavit. *Id*.

The good faith exception has only four narrow exclusions: (1) when the affiant misled the judge with knowingly or recklessly false information; (2) when the warrant was issued by a judge who "wholly abandoned his judicial role"; (3) when the affidavit was "so lacking in indicia of probable cause" that reliance on it would be "entirely unreasonable," and (4) when the warrant was "so facially deficient—i.e., in failing to particularize the place to be searched or the things to

be seized—that the executing officers [could not] reasonably presume it to be valid." *See Leon*, 468 U.S. at 923. Unless one of those exclusions applies, officers are entitled to rely on a duly issued warrant and suppression is inappropriate, even where a warrant is deficient.

### III.   ARGUMENT

The defendant has moved to suppress the contents seized from his phone pursuant to the February 26, 2019, search warrant. He presents two arguments: first, that there was insufficient probable cause to support the search, and second, that there was an insufficient nexus between the information on the phone and the crime listed on the warrant.[2] However, a common-sense reading of the search warrant affidavit provides for probable cause to search the defendant's phone and demonstrates a nexus between the contents of the phone and the crimes investigated. In any event, even assuming a lack of probable cause, suppression is not warranted in this case because the officers relied upon the warrant in good faith.[3]

### a.   There was sufficient probable cause to search the defendant's cellphone.

Substantial evidence supported the state magistrate judge's determination that there was a "fair probability" that evidence of a crime, namely homicide, would be found on the defendant's phone. The facts set forth in the warrant affidavit, coupled with the reasonable inferences that followed from those facts, satisfied the "not particularly demanding" probable cause standard. *Ortiz*, 669 F.3d at 446.

---

[2] While the defendant has additionally cited the search warrant affidavit for the defendant's apartment, the defendant makes no argument that the phone itself was improperly seized pursuant to that warrant. The only arguments presented pertain to the download of the data from the phone. Thus, the government limits its response to address only the second warrant, and the data downloaded from the phone pursuant to that warrant.

[3] The Court may decide to exclusively decide this motion on good faith grounds. *See United States v. Bosyk,* 933 F.3d 319, 332 n.10 (4th Cir. 2019) ("Principles of judicial restraint often support skipping the probable cause question when *Leon* bars suppression.").

6

Here, the search warrant affidavit clearly identified that officers were investigating a homicide and the discharge of the firearm, that they intended to search several phones collected the night of the homicide, including the defendant's, and that they were seeking any information that would facilitate the investigation into the homicide. The material facts from the affidavit which supported this request were as follows:

> On Sunday, February 24, 2019, at approximately 2055 hrs the Roanoke County Police Department responded to a disturbance with a weapon incident at 6491 Carefree Lane Apt. 35-C, in Roanoke County. Upon arrival officers located an individual who was shot and pronounced dead at the scene. Multiple individuals were present at the location and there were multiple stories as to the events that took place. Five phones and one computer were collected by individuals on scene at the time of the incident. During the investigation, information was obtained through these individuals, there was conversation regarding possible illegal drug activity and unknown information regarding a potential robbery of the parties involved.

ECF 57-1 at 3.

Common sense dictates that, in a situation involving an apparent robbery and illegal drug activity, and where multiple individuals present at the time of the homicide tell investigators different stories regarding the incident, then there is likely more information related to the homicide and the circumstances surrounding the discharge of the firearm on those individuals' phones. Based on the facts in the affidavit, the magistrate could reasonably infer that, due to the inconsistent stories told by the eyewitnesses to the homicide, there was likely information that was being concealed. It would also be reasonable to infer from these facts that whatever information was being concealed may have been related to the illegal drug activity and how it might explain the circumstances surrounding the homicide and the discharge of the firearm. Lastly, it is reasonable to infer, based on the facts provided, that illegal drug activity, led to a robbery, which is the reason that a firearm was discharged and that a homicide ultimately occurred.

Cell phones are ubiquitous in the modern day, for both lawful and unlawful purposes, and it is well-known that individuals who deal in illegal drugs often communicate via cell phone to purchase and/or sell the drugs. Moreover, an investigation into a homicide—especially one occurring in the context of illegal drug activity—does not stop at identifying the shooter and the deceased. For various reasons, such an investigation necessarily must include a deeper dive into the reasons why an individual shot another person, such as to figure out whether another person might be involved, to ascertain whether the danger has abated, and to gather evidence to determine the viability of prosecution. In this case in particular, once investigators determined that drugs were involved and a robbery may have been the impetus for the shooting, it became necessary to determine to what extent, if any, the illegal drug activity played a role in the homicide. Thus, returning to common sense, a person of reasonable prudence could determine based on these facts that there was a fair probability that evidence of a crime, particularly the homicide and illegal drug activity that may have prompted the homicide, would be found on the defendant's phone. Therefore, because the search warrant was supported by probable cause, the defendant's motion to suppress should be denied.

Similarly, a sufficient nexus is apparent between the information on the defendant's cell phone and the crime to be investigated. "[T]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988). As established previously, the magistrate could make the fair inference from the stated facts in the affidavit that narcotics were involved in the homicide and that it was potentially a narcotics-related robbery gone bad. Under the facts established, it is reasonable to infer that the search of the phone for contact information, text messages, application data, etc. was necessary to determine

8

whether and what communications about narcotics led to the robbery-turned-homicide. Thus, there was a sufficient nexus between the data on the cell phone and the crime being investigated.

Therefore, considering the foregoing, the defendant's motion to suppress the data downloaded from his cell phone should be denied.

### b. Officers relied on the search warrant in good faith.

Even if the Court assumes, or were to decide, that there was not "substantial evidence" supporting the state magistrate's determination of probable cause, suppression would still be unwarranted because the investigators relied in good faith on the duly issued search warrant for cell phone data. As explained above, under the good-faith exception to the exclusionary rule, evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant" may not be suppressed. *See United States v. Bosyk*, 933 F.3d 319, 332 (4th Cir. 2019).

Here, the officers relied in good faith on the warrant. "Officers executing warrants are not often expected to question the conclusions of an issuing authority." *United States v. Seerden*, 916 F.3d 360, 367 (4th Cir. 2019). Here, the face of the warrant identified that investigators were seeking to search the cell phones that had been obtained from the individuals present at the homicide. The material facts in the affidavit identified that an individual had been shot and killed, there were multiple witnesses, who had varying stories, all with cell phones, illegal drug activity, and a robbery. It's not hard to understand why a magistrate would determine these facts provide sufficient probable cause to search these individuals cell phones, including the defendant's, for evidence related to drug activity that led to a homicide. Thus, this affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 366. (quoting *Leon*, 468 U.S. at 923.).

In addition, this case falls squarely within the scope of *Mckenzie-Gude*'s elucidation of the good-faith rule—namely, that officers will have "acted with the requisite objective reasonableness when [they] rel[ied] on uncontroverted facts known to them but inadvertently not presented to the magistrate." *McKenzie-Gude*, 671 F.3d at 460. Indeed, courts routinely find the good faith exception applies where officers knew of relevant information that was sufficient to show probable case but failed to include it in the affidavit. *See, e.g.*, *United States v. Jordan*, No. 2020 WL 674456, at *3 (W.D. Va. Feb. 11, 2020), *aff'd*, No. 21-4129, 2023 WL 1461995 (4th Cir. Feb. 2, 2023) (finding good faith exception applied because, although not included in the warrant affidavit, officers had consistent information from various informants that defendant was selling narcotics); *United States v. Thomas*, 2016 WL 7324095, at *2 (W.D. Va. Dec. 15, 2016), *aff'd*, 908 F.3d 68 (4th Cir. 2018) (finding good faith exception applied to cellphone search warrant because the detective knew the defendant "used a phone in furtherance of his criminal conduct" and "reasonably could infer" that target cellphone was the cellphone that had been used).

The defendant does not address this aspect of the good-faith rule; that is, he makes no argument that the totality of the facts known to law enforcement did not rise to the level of probable cause. He instead relies on the mere assertion that the affidavit was so lacking in probable cause that the officer's reliance on the search warrant was unreasonable. The defendant specifically points to the lack of a nexus between the cell phone and the crime being investigated. However, when examining all the information known to investigators at the time the search warrant was issued, it is clear investigators possessed probable cause to search the defendant's phone.

The affidavit noted that information had been obtained from the witnesses to the homicide that illegal narcotics activity and a robbery were involved in the homicide. The affidavit also noted that the cell phones had been seized from the individuals. Among the information that was not

10

included in the affidavit but that was known to law enforcement at the time the affidavit was submitted to the magistrate was that the defendant sold marijuana, that he sold marijuana to the individuals who showed up at his residence to rob him, and that there had been phone communications regarding narcotics between at least the defendant and two others who were witnesses to the homicide. When considering just these few uncontroverted facts, known to the investigators at the time the warrant was issued, the existence of probable cause and the nexus between the defendant's phone and the homicide investigation becomes obvious. The defendant's cell phone likely contained evidence related to narcotics trafficking, which appeared to be the impetus for the attempted robbery turned homicide. In essence, these facts spell out what were fair inferences from the face of the affidavit.

When considering the foregoing, it is apparent that the investigators relied in good faith on the issued search warrants. The defendant has made no allegation of bad faith, and, at worst, the failure to include a few uncontroverted facts from multiple interviews with witnesses of the homicide was an oversight. Thus, should this court invalidate the February 26, 2019, search warrant, or otherwise assume it were invalid, the good-faith exception would apply, and this Court should decline to apply the exclusionary rule.

Therefore, the defendant's motion to suppress his cell phone data should be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny the defendant's motion to suppress the cell phone digital information.

Respectfully submitted,

ZACHARY T. LEE
Acting United States Attorney

<u>/s/ John W. Beamer</u>
John W. Beamer
Special Assistant United States Attorney
Virginia Bar No. 93383
United States Attorney's Office
310 First Street, SW, 9th Floor
Roanoke, Virginia 24011
540-857-2250
John.Beamer@usdoj.gov

<u>/s/ Charlene R. Day</u>
Charlene Rene Day
VA Bar No. 42707
Assistant United States Attorney
United States Attorney's Office
P.O. Box 1709
Roanoke, VA 24008-1709
charlene.day@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 24, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the Defendant.

                                         /s/ John W. Beamer
                                         Special Assistant United States Attorney