CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
4/3/2025
LAURA A. AUSTIN, CLERK
BY: *s/c X/rmp*
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **Criminal No.: 7:23-cr-0047** |
| | ) | |
| **DAMON TYLER MILLS,** | ) | **By: Michael F. Urbanski** |
| **Defendant.** | ) | **Senior United States District Judge** |

### ORDER

Defendant Damon Tyler Mills' trial is set to begin on April 7, 2025. Ahead of trial, the United States and counsel for defendant separately filed eleven motions: by defendant, a motion to suppress evidence retrieved from defendant's cellphone (ECF No. 57), a motion in limine regarding photographs of the deceased (ECF No. 58), a motion for exculpatory evidence (ECF No. 59), a motion to sever Counts I-III from Counts IV-V (ECF No. 60), a motion for disclosure of expert evidence (ECF No. 61), a motion for early release of Jencks Act material (ECF No. 62), and a motion to dismiss Count IV of the indictment as unconstitutional (ECF No. 67); and by the government, a motion seeking an order precluding defendant from referencing potential sentences or punishment (ECF No. 63), a motion to preclude argument regarding self-defense and/or defense of justification (ECF No. 64), a motion to exclude irrelevant evidence (ECF No. 65), and a motion for a Lafler/Frye inquiry (ECF No. 66). The court heard argument on these motions on March 31, 2025. See ECF No. 102. At that time, the court ruled from the bench regarding each motion. Id. This order further elaborates on the court's rulings, and addresses each motion in turn.

ECF No. 57

The defense moves to suppress the digital contents of Mills' cellphone which was seized from him on February 24, 2019. ECF No. 57 at 1. The defense argues that the affidavit in support of the warrant that allowed for the seizure fails to establish probable cause to search the contents of the cell phone.  Id. at 4.  The defense argues that the affidavit supporting the warrant was "so lacking in probable cause as to render official belief in its existence entirely unreasonable" and thus the good faith exception to the exclusionary rule should not apply. See id. at 4-5 (quoting United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993)). The defense focuses on the lack of sufficient nexus between the cell phone and the crime investigated, and argued at the hearing that the warrant's failure to include a drug distribution crime as a crime to be investigated on the warrant further defeats probable cause. See id. at 4. "Indeed," the defense notes, "the affidavits make no mention at all of what the cell phone data might contain" and thus, "[t]he affidavits provided the magistrate with no information linking the cell phone to the crime listed in the warrant." Id. "Without such a nexus, there was no substantial basis" on which the magistrate could find probable cause, according to defendant. Id.

The government opposes the defense's motion on the grounds that the digital information was seized pursuant to a valid search warrant that was supported by probable cause, and, even if the court were to find the warrant invalid, the officers acted in good faith when executing the warrant. See ECF No. 80. The government bases its arguments around the then-pending investigation into the murder of the deceased, and whether the murder was related to preexisting drug trafficking activity. To the government, "[c]ommon sense dictates

that, in a situation involving an apparent robbery and illegal drug activity, and where multiple individuals present at the time of the homicide tell investigators different stories regarding the incident, then there is likely more information related to the homicide and the circumstances surrounding the discharge of the firearm on those individuals phones." Id. at 7. The government argues a sufficient nexus is "apparent" as "the magistrate could make the fair inference from the stated facts in the affidavit that narcotics were involved in the homicide and that it was potentially a narcotics-related robbery gone bad." Id. at 8. According to the government, it is therefore "reasonable to infer that the search of the phone for contact information, text messages, application data, etc. was necessary to determine whether and what communications about narcotics led to the robbery-turned-homicide." Id. at 8-9.

The government further argues that even if the court decides that there was not substantial evidence supporting the probable cause finding, suppression is unwarranted because the investigating officers fall into the good faith exception. See ECF No. 80 at 9-11. Defendant disagrees, arguing that the affidavit "is so lacking in probable cause that no reasonably well-trained officer would have relied upon it." ECF No. 57 at 3.  The government points to U.S. v. McKenzie-Gude, 671 F.3d 452 (4th Cir. 2011), for the idea that the officers acted "with requisite objective reasonableness when they relied on uncontroverted facts known to them but inadvertently not presented to the magistrate." ECF No. 80 at 10 (quoting McKenzie-Gude, 671 F.3d at 460). The government argues that "known to law enforcement at the time the affidavit was submitted to the magistrate" was the fact that "defendant sold marijuana, that he sold marijuana to the individuals who showed up at his residence to rob him, and that there had been phone communications regarding narcotics between at least the

defendant and two others who were witnesses to the homicide." Id. at 11.  In McKenzie-Gude, the Fourth Circuit held that the good faith exception applies where experienced officers, "who swore out the affidavit and executed the search, acted with the requisite objective reasonableness when relying on uncontroverted facts known to them but inadvertently not presented to the magistrate." McKenzie-Gude, 671 F.3d at 460; see also United States v. Thomas, 908 F.3d 68, 73-75 (4th Cir. 2018).

At the hearing held on March 31, 2025, the court heard testimony from Det. A.  Grubb of the Roanoke County Police Department. See ECF No. 102. Det. Grubb was the applicant for the warrant to search defendant's cellphone. See ECF No. 57-1. The warrant affidavit listed the offenses to which the search was regarding; these included, "Violation of Section 18.2-32 of the 1950 Code of Virginia, as amended to wit: Murder and Violation of Section 18.2-279 of the Code of Virginia, as amended to wit: Discharge Firearm Occupied, Dwelling, at or within." Id. at 2. The affidavit listed the "things or person to be searched for" as "[a]ny and all information and items that will facilitate the investigation of 18.2-32 of the 1950 Code of Virginia, as amended to wit: Murder. [T]o include but not limited to: contact information, text messages, application data, photographs, videos, and web browser history." Id. As probable cause supporting the search, Det. Grubb listed on the affidavit:

> On Sunday, February 24, 2019, at approximately 2055 hrs the Roanoke County Police Department responded to a disturbance with a weapon incident at 6491 Carefree Lane Apt. 35-C, in Roanoke County. Upon arrival officers located an individual who was shot and pronounced dead at the scene. Multiple individuals were present at the location and there were multiple stories as to the events that took place. Five phones and one computer were collected by individuals on scene at the time of the incident. During the investigation, information was obtained through these individuals, there was conversation regarding possible illegal drug activity and unknown information regarding a potential robbery of the parties involved.

4

Id. at 3. The probable cause section of the affidavit is similar to the probable cause section in the affidavit seeking a warrant for the collection of defendant's cellphone. See ECF No. 57-2 at 4. At the hearing, Det. Grubb testified that it was likely he had copied the first few sentences of the probable cause section from the prior warrant, but had added the additional facts that five phones and one computer were collected from those at the scene of the incident, and that "[d]uring the investigation, information was obtained through these individuals, [and] there was conversation regarding possible illegal drug activity and unknown information regarding a potential robbery of the parties involved." ECF No. 57-1 at 3. Neither affidavit identifies from which individuals the phones were collected. See ECF Nos. 57-1, 57-2. Defendant only challenges the sufficiency of the warrant supporting the search of his cellphone, and does not challenge the sufficiency of the warrant supporting the collection of his phone.

"The Fourth Amendment commands that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" U.S. v. Orozco, 41 F.4th 403, 407 (4th Cir. 2022) (quoting U.S. Const. amend. IV). "Probable cause has long been understood to encompass circumstances that, while less than a preponderance, 'warrant suspicion.'" Id. (quoting U.S. v. Gondres-Medrano, 3 F.4th 708, 714 (4th Cir. 2021)). "We afford initial probable cause determinations 'great deference' when, as here, a 'neutral and detached magistrate' finds probable cause to support a warrant." Id. (quoting Illinois v. Gates, 462 U.S. 213, 236, 240 (1983)). "The task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the

magistrate's decision to issue the warrant." Id. (quoting Massachusetts v. Upton, 466 U.S. 727, 728 (1984) (per curiam) (alteration adopted)).

"Although the concept of probable cause defies a precise definition, it 'exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found' in the place to be searched." U.S. v. Richardson, 607 F.3d 357, 369 (4th Cir. 2010) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). "A probable cause assessment requires the issuing judge to decide whether, given the totality of the circumstances, there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Gates, 462 U.S. at 238).

Even if a warrant is found to be lacking probable cause, the court will not apply the exclusionary rule to evidence that "a law enforcement officer has obtained 'in objectively reasonable reliance on' a search warrant." U.S. v. Burton, 756 Fed. Appx. 295, 301 (4th Cir. 2018) (quoting U.S. v. Leon, 468 U.S. 897, 922 (1984)). The Fourth Circuit recognizes four circumstances in which the so-called good faith exception does not apply:

(1) when the affiant based his application on knowing or reckless falsity;
(2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a 'rubber stamp' for the police;
(3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
(4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid.

Id. (quoting U.S. v. Wellman, 663 F.3d 224, 228-29 (4th Cir. 2011)).

After review of the parties' briefings and argument and evidence at the hearing, the court finds that there is sufficient probable cause justifying the search warrant. The warrant affidavit stated that "[f]ive phones and one computer were collected by individuals on scene

6

at the time of the incident." ECF No. 57-1 at 3. As these devices were collected the night of the incident from individuals present at the incident, the phones and computer could provide evidence to the charge of murder. The probable cause section of the affidavit specifically notes that "[d]uring the investigation, information was obtained through these individuals," and "there was conversation regarding possible illegal drug activity and unknown information regarding a potential robbery of the parties involved." Id. Thus, the "possible illegal drug activity" could provide motive that supports the crime of murder. Additionally, at the time Det. Grubb sought the search warrant, he was aware that defendant exchanged text messages with another individual at the scene regarding setting up drug deals, which further indicates the possibility that a search of defendant's phone would cast light on motive and/or events leading up to the shooting. The fact that defendant is not specifically named in the affidavit as the owner of the phone or as the person who shot the deceased is immaterial as there is sufficient specificity with the affidavit stating that the phones were collected from individuals present at the scene and time of the incident. See id. On its face, therefore, this search warrant application is sufficient, as the neutral and detached magistrate originally found. Further, under the Fourth Circuit's guidance in McKenzie-Gude, additional facts known to the investigating officer, like defendant's name, ownership of the phone to be searched, and alleged relationship to drug trafficking, further support a finding of probable cause sufficient to justify the search in this case.

Even if the affidavit in this case was found to lack probable cause, suppression would be inappropriate as the officers' execution of the warrant would fall under the good faith exception enumerated by the Supreme Court in Leon. There is no basis on which suppression

7

would be appropriate, as this is not a situation where application was made based on knowing or reckless falsity, the judicial officer abandoned his role, the warrant was so lacking in probable cause as to render official belief in it unreasonable, or the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid. The court therefore **DENIES** defendant's motion to suppress, ECF No. 57.

ECF No. 58

The defense moves to exclude from evidence at trial certain autopsy and crime scene photographs of the deceased under FRE 403. Defendant argues that the deceased was fatally shot at defendant's residence as he attempted to rob defendant. ECF No. 58 at 1. The defense notes that certain of the photographs provided in discovery by the United States are of the deceased's autopsy, and "certain close-up pictures of the deceased's face and body taken at the scene … are quite gruesome." Id. The defense does not seek to have all photographs of the deceased at the scene be excluded, but argues that the autopsy photographs and the "more gruesome crime scene photographs" would create unfair prejudice, and thus are excludable under FRE 403. The defense notes that it does not object to photos labeled in discovery as "Panoramic Photos" that contain a "diagram of the scene." Id. at 1-2.

The government responded to the defense's motion, arguing that the defense's motion should be denied as moot as the government "only intends to offer the 'Panoramic Photos,' as mentioned in the defendant's motion, and one photograph of the deceased, which is embedded in that exhibit." ECF No. 75. The government included as a sealed exhibit a copy of that photo, which depicts the deceased lying on the floor of an apartment with various medical devices attached to him.

8

At the hearing, defendant reiterated his objection to the government offering into evidence at trial the photo of the deceased lying on the floor. Though defendant did not object to the government's use of the Panoramic Photos, defendant reiterated that the photo of the deceased, which was a larger version of a section of the Panoramic Photo, was unduly prejudicial. Upon examination of the photo in court, and with no objection from the government, the court ordered the government to block out the face of the deceased from the photo in question. The court therefore **GRANTS IN PART** and **DENIES IN PART** defendant's motion, ECF No. 58, and the government is ordered to block out the deceased's face from the photo.

<u>ECF No. 59</u>

The defense motioned the court to require the government to produce any and all <u>Brady</u>, <u>Giglio</u>, <u>Kyle</u> and <u>Agurs</u> evidence that may be favorable to defendant on the issues of guilt or punishment, and/or that shows any evidence of bias of the witnesses, and/or any evidence which might diminish the credibility of witnesses, including plea agreements, negotiations with the government, polygraph examinations, criminal records of witnesses, and similar.

The government responded to the defense's motion by arguing the motion should be denied as moot, as the government has complied with its obligations under <u>Brady</u> and its progeny "by providing all discovery to defense counsel … to which the defendant is entitled." ECF No. 79. The government also confirmed it is in compliance with the court's order from defendant's initial appearance to comply with its disclosure obligations. <u>Id.</u>

At the hearing, the defense noted that the government has provided everything to the defense that the government is currently aware of, but asked that the court inquire of the government whether there is any Giglio material to which the defense is entitled. The court questioned the government regarding its disclosures under Giglio, Brady, and Jencks. The government stated that it, at present, has no Giglio information to provide to the defense, but, should the government become aware of any Giglio information, it will turn it over to the defense as soon as possible. The government confirmed it has been providing to the defense any Brady information, and is in the process of completing its Jencks obligations. As part of the court's inquiry of the government, the court ordered the government to provide to defense counsel the plea agreements, presentence reports, and sealed sentencing memoranda filed by the government and defense for three government witnesses expected to testify in the government's case against defendant. See ECF No. 104. Following this order, the government noted to the court that it has provided information in its possession regarding the prosecution of an additional government witness, who was not prosecuted federally, to the defense. The court therefore **GRANTS** defendant's motion, ECF No. 59.

ECF No. 60

The defense moves to sever the trial of the two incidents alleged in the indictment as Counts I-III arose from a robbery occurring on November 9, 2018, while Counts IV-V arose from a "shooting incident" which occurred on February 24, 2019. ECF No. 60 at 1-2. The defense argues that under Fed. R. Crim. P. 8(a) the two unrelated incidents should not be joined and must be severed. Id. Specifically, the defense argues that there is no connection between the two incidents except for Mills himself, and that evidence presented by the

government in a severed trial of the 2018 charges would not be admissible in a severed trial of the 2019 charges. Id. at 3. Therefore, a consolidated trial of the two "unrelated" incidents would "cause Mills to suffer extreme prejudice." Id.

The government filed its response to the defense's motion under seal. See ECF No. 76-2. The government argues the defense motion should be denied, as (1) defendant has not made a strong showing of prejudice; (2) any prejudice resulting from trying the cases together would be cured by limiting instructions; (3) the charges are properly joined under Rule 8; and (4) severance is not warranted under Rule 14. Id. The government's primary theory for joinder is that defendant trafficked in marijuana, and both incidents (the robbery and the shooting) (1) arise out of defendant's drug trafficking and (2) include firearms, which defendant carried as part of his drug trafficking. Id. at 5-6. Additionally, the government argues that joinder is proper because it would be more efficient to try the cases together, as witnesses and evidence overlap, to an extent. Id. at 6-8. The government also argues that the case should not be severed as there will be little prejudice, if any, to defendant in trying the cases together because "a significant portion" of the evidence for each incident would be admissible in the other trial, and "the defendant does not make any effort to explain which grouping of offenses he considers to be more prejudicial—that is, in which direction the purported prejudice runs." Id. at 9 (citing United States v. Cole, 857 F.2d 971 (4th Cir. 1988), and United States v. Goldman, 750 F.2d 1221 (4th Cir. 1984), among others). The government notes that limiting instructions would aid in avoiding prejudice in this case, as opposed to severing the counts. Id. at 9-10.

The defense filed its reply under seal. See ECF No. 96. In its reply, defendant argues that "the two incidents were separate, discreet, and dissimilar offenses," that were (1) not temporally related; (2) involved "totally different actors"; (3) not part of the same law enforcement investigation; and (4) involved different charges. See id. at 2-3. Defendant also argues that the government's attempts to link the two incidents by way of defendant's alleged marijuana trafficking are inapposite as, though defendant and the victim in the robbery underlying Counts I-III had an alleged relationship due to drug trafficking, defendant and the deceased in Counts IV-V had no such relationship. See id. at 3-4. The defense clarifies in its reply that where "there is a serious risk" of prejudice is from the alleged robbery underlying Counts I-III prejudicing the jury as to its evaluation of Counts IV-V. See id. at 6. The defense cites United States v. Mackins, 315 F.3d 399 (4th Cir. 2003) and United States v. Randazzo, 80 F.3d 623 (1st Cir. 1996) in support of its arguments. Id. at 4.

At the hearing, the court heard argument from the defense and the government. The defense elaborated on the arguments in its briefs, arguing that the incidents are separated in time, separated by different law enforcement agency investigations, and separated by the parties. The defense noted that undue prejudice would result from the jury hearing about the incident underlying the Count I-III charges, as those charges involved an alleged greater quantity of drugs, such that when the jury went to consider the evidence as to Counts IV-V, even a limiting instruction could not cure the risk the jury would not be able to hear the evidence impartially. In response, the government noted that this case presents a close call, but that the evidence demonstrates that defendant was trafficking in drugs before the November 2018 incident and between the November 2018 and February 2019 incidents. The

government stated that testimony at trial would show that as part of defendant's drug trafficking, defendant would always carry a firearm on him, and thus, during the period before the robbery and continuing through February 2019, defendant was trafficking in marijuana while armed. The government also reviewed which witnesses and evidence would overlap between the two trials.

> Under Fed. R. Crim. P. 8(a):
>
> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both— are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Id. "Rule 8(a) permits 'very broad joinder,' … 'because the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding.'" U.S. v. Hawkins, 776 F.3d 200, 206 (4th Cir. 2015) (internal citations omitted). "The requirements of Rule 8(a), however, are not infinitely elastic, and so cannot be stretched to cover offenses ... which are discrete and dissimilar." Id. (cleaned up, internal citations omitted). As to whether the charges are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan, the court interprets "this rule 'flexibly, requiring that the joined offenses have a logical relationship to one another.'" U.S. v. McLaurin, 764 F.3d 372, 385 (4th Cir. 2014) (quoting U.S. v. Cardwell, 433 F.3d 378, 385 (4th Cir.2005)). "Joined offenses have a logical relationship to one another for Rule 8(a) purposes, 'when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise.'" Id. Also relevant is Fed. R. Crim. P. 14(a) which states, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the

government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Id.

Here, defendant is charged with Conspiracy to Commit Hobbs Act Robbery (Count I), Hobbs Act Robbery (Count II), Brandish a Firearm in Furtherance of a Crime of Violence (Count III), Discharge a Firearm in Furtherance of a Drug Trafficking Crime (Count IV), and Possession of a Controlled Substance with Intent to Distribute (Count V). The government argues that the counts have a logical relationship to one another by nature of defendant's drug trafficking. However, Counts I-III arise from a robbery by defendant of his former marijuana supplier. Defendant committed this robbery alongside a co-conspirator, who the government has not named. Counts IV-V arise out of an attempted robbery of defendant by the deceased, at defendant's residence. A friend of defendant was present for the attempted robbery, as was an alleged client of defendant. The firearms used by defendant at each incident were different.

The government does not draw connections between the people present at the two incidents, beyond defendant. The government alleges the incidents are of the same or similar character; however, in one of these incidents, defendant was the perpetrator; in the other, he was the intended victim of a robbery arising from drug dealing. The government's argument that both incidents arise out of defendant's marijuana trafficking is well-taken. The government argued at the hearing that the evidence will show that defendant trafficked in marijuana prior to the November 2018 incident, and between the November 2018 and February 2019 incidents. The government noted that the victim in the November 2018 robbery was a former supplier of marijuana to defendant. The government also alluded to text messages establishing drug deals between defendant and the individual who drove with the

14

deceased to defendant's house the night of the shooting incident. Both incidents also involved firearms, and though the incidents involved different firearms, they appear to be two episodes in a larger continuum of defendant's armed drug trafficking. Therefore, the court finds there is a logical connection between the incidents of November 2018 and February 2019 such that joinder of the charges is proper. See McLaurin, 764 F.3d at 385-387 (finding no reversible error in denying severance, where jury heard testimony connecting defendant's possession of gun to defendant's charged conspiracy, and the court subsequently denied severance of defendant's felon in possession counts from the conspiracy counts, because "[defendant's] felon-in-possession counts have a logical relationship to his conspiracy counts in that they help paint the complete picture of McLaurin's criminal enterprise."); see also U.S. v. Stokes, 211 F.3d 1039, 1042-1044 (7th Cir. 2000) (finding no abuse of discretion in denying severance where defendant sought to sever felon-in-possession count from drug and firearm counts).

The court notes that it is not persuaded by defendant's reliance on Mackins and Randazzo. In Mackins, the Fourth Circuit held that the district court erred in denying severance where three defendants had been indicted on charges related to drug conspiracy and money laundering counts for the years of 1982-1998 and one of the three defendants also had been charged related to a 1996-1997 conspiracy to defraud federal banking institutions (via counterfeit checks). 315 F.3d at 412. The indictment in that case did "not allege any explicit connection between the counterfeit check scheme and the drug and money laundering schemes" and "no evidence produced at trial... suggested that counterfeit checks...were, in fact, used to launder drug money," as the district court had suggested as a possible tie between the charges. Id. at 413. The government in that case "made no effort in its arguments before"

15

the Fourth Circuit "to establish … a connection," between the charges. Id. The Fourth Circuit ultimately held that the district court erred in allowing joinder, but that the error was harmless. Id. at 413, 415.

In Randazzo, the First Circuit held that joinder was improper where the indictment charged an individual defendant and the New England Shrimp Company with 97 counts of "us[ing] certain substances in producing shrimp that were prohibited or at least needed to be disclosed on labels" and the individual defendant alone with 4 counts alleging "that he had caused the Company to file false corporate tax returns." 80 F.3d at 626. The First Circuit held joinder was improper because "[t]he misconduct underlying the shrimp counts and the improper claiming of expenses on the returns were not part of the same 'scheme or plan' in any sense of the phrase." Id. at 627. The First Circuit held that even though joinder was improper, it was "patently harmless." Id. at 628.

The instant case is distinguishable from that of Mackins or Randazzo as the incidents charged have a logical connection—defendant's alleged armed drug trafficking. The two incidents both arose out of defendant's trafficking of marijuana, with the November 2018 incident victimizing defendant's alleged former marijuana supplier, and the February 2019 incident originating out of the alleged seller-client relationship between defendant and the individual who accompanied the deceased to defendant's residence. Both incidents also involve firearms, and the government has represented that the evidence at trial would show that defendant was known to always have a firearm on him. Defendant was also allegedly trafficking in drugs before November 2018 and continuing through February 2019. Thus,

connection in this case between Counts I-III and Counts IV-V is stronger than the improperly joined counts in either <u>Mackins</u> or <u>Randazzo</u>.

Along with the logical connection between the incidents, also weighing in favor of proper joinder is the principle of judicial economy. <u>See</u> <u>Stokes</u>, 211 F.3d at 1042 ("[C]ourts also have a strong interest in favor of joinder of offenses; in particular, joinder of offenses reduces the waste of precious judicial and prosecutorial time in the already overburdened federal judicial system and reduces the burdens on witnesses from testifying at multiple trials."). The government argues that "multiple law enforcement witnesses would be necessary to present relevant, admissible evidence for both" events, and "several non-law enforcement witness[es] would provide evidence that is necessary to prove the crimes in each offense grouping." ECF No. 76 at 6-7. The government states that certain witnesses are not local to the Roanoke area. <u>Id.</u> at 7-8. The government also argues that "messages and photographs from the forensic download of the defendant's phone are admissible, relevant evidence for both groups of offenses." <u>Id.</u>

The parties disagree, however, as to the extent of evidence that would be admissible in both trials. <u>See</u> ECF No. 60 at 3-4; ECF No. 76 at 8-9.  For example, defendant argues that evidence of the robbery would be inadmissible in the trial of the shooting incident. <u>See</u> ECF No. 96 at 6. The government relies on <u>U.S. v. Cole</u>, 857 F.2d 971 (4th Cir. 1988), however, for the idea that even if "[i]t is true that 'not all of the evidence of each of the joined crimes would be admissible in separate trials of the individual counts, … the fact that much of it could be properly introduced greatly mitigates any prejudice to the defendants that results from the joinder." ECF No. 76 at 9 (quoting <u>Cole</u>, 857 F.2d at 974 (alterations adopted)). The court

finds the government's argument persuasive. In the instant case, though select evidence may not be admissible in a severed trial, the government has demonstrated that a significant amount of the same evidence and/or testimony would be presented in both trials. Further, any undue prejudice in this case can be cured by a limiting instruction. <u>See, e.g.</u>, <u>Cole</u>, 857 F.2d at 974 (finding no abuse of discretion where trial court denied severance, and noting trial court's "cautionary instruction to the jury to safeguard against the possibility of cumulation of evidence and prejudice to the defendants" as a factor weighing in favor of that finding); <u>Stokes</u>, 211 F.3d at 1043-1044 (finding proper district court's limiting instruction to jury as "the jury was instructed to consider each count and the relating evidence separately; [and] there [is] no reason to suppose that it would disregard this mandate" (quoting <u>United States v. Coleman</u>, 22 F.3d 126, 135 (7th Cir.1994)); <u>McLaurin</u>, 764 F.3d at 391 (Floyd, J., concurring in part) (noting district court's use of limiting instruction weighed against finding of prejudice); <u>U.S. v. Mir</u>, 525 F.3d 351, 356-358 (4th Cir. 2008) (finding proper district court's denial of severance motion and suggestion of limiting instruction as "any prejudice resulting from a single trial on multiple counts can be cured by other, less restrictive means than severance" (citing <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993)).

For the reasons stated above and on the record at the hearing held on March 31, 2025, the court **DENIES** defendant's motion, ECF No. 60.

<u>ECF No. 61</u>

The defense moves pursuant to Fed. R. Crim. P. 16(a)(1)(G) for a "written summary of testimony the government intends to use under Rules 702, 703, or 705" of the FRE during its case in chief. ECF No. 61 at 1.

On March 20, 2025, prior to responding to the defense's motion, the government filed a notice of its intent to introduce expert testimony. ECF No. 71. This notice related to DEA Task Force Officer Travis Honse, who the government intends to call for his expertise regarding drug trafficking patterns and practices, and drug slang and jargon as used by drug traffickers. See id.

The government then responded to the defense's motion on March 24, 2025. ECF No. 77. In their response, the government argues the court should deny as moot the defense's motion because the government is "actively working to comply with its obligations under Rule 16(a)(1)(G), and will make its required disclosures in sufficient time to give the defendant a fair opportunity to meet the government's evidence at trial." Id. The government noted it may call up to two expert witnesses: Officer Honse and a second expert witness who may testify about digital forensics as related to cell phone downloads, if necessary. Id.

At the hearing, the parties were in agreement as to the government's disclosure of its expert witnesses. The court therefore **DENIES AS MOOT** defendant's motion, ECF No. 61.

ECF No. 62

The defense moves the court to require the prosecution to provide the defense any statements of the witnesses that the government intends to call at trial. ECF No. 62. The defense also moves for early production of Jencks Act material as soon as possible and prior to trial, in the interests of trial efficiency. Id.

The government responded to the defense's motion by arguing (1) there is no mechanism under statute to compel the government to provide early disclosure of Jencks

information; (2) the government has endeavored to supply the defendant with "most" Jencks material it possesses; and (3) the government will continue to disclose "all" such material in a timely fashion. ECF No. 78.

At the hearing, and as part of the court's inquiry of the government into its disclosures related to defendant's related motion (ECF No. 59), the government confirmed it is working to comply with its Jencks obligations, and noted that it has provided to defense counsel all of its witnesses interviews. The court therefore **DENIES AS MOOT** defendant's motion, ECF No. 62.

ECF No. 63

The government requests that the court direct defendant, his counsel, and all defense witnesses not to mention, refer to, or bring to the attention of the jury in any manner, the consequences of a prison sentence, the potential length of that sentence, or other consequences defendant may receive if convicted of the charged offenses in front of the jury. ECF No. 63 at 1. The government requests that before any party seeks to bring that information in at trial, it first approach the bench and obtain a ruling on the admissibility of so doing. Id.

The defense opposed the government's motion to the extent it seeks to impede defendant's Sixth Amendment right to confront the government's witnesses on cross-examination. See ECF No. 73 (discussing cross-examination of witnesses on issues of bias, prejudice and impeachment, as relating to plea deals, sentence reductions, and prior convictions). The defense conceded that defendant's potential sentence is not relevant to his guilt or innocence. Id. at 3.

The government replied in support of its motion. See ECF No. 86. In short, the government argues that "defendant's response is a non sequitur," as the government's motion sought only to limit references to defendant's potential sentences and/or punishment, and not references to sentences and/or punishment of the government's witnesses. Id.

After evaluating the briefs and hearing from the parties at the hearing, the court **GRANTS** the government's motion, but notes that its ruling does not constrain defendant from exercising his Sixth Amendment right to confront the government's witnesses on cross-examination.

ECF No. 64

The government moves to preclude defendant from arguing that he possessed, brandished, or discharged a firearm in self-defense or under any similar theory, such as duress or necessity. ECF No. 64 at 1. The government specifically seeks that these theories/defenses also be precluded during voir dire and opening statements. The government argues that self defense is "irrelevant to a section 924(c) violation" and that "a drug dealer possessing a firearm for protection in order to defend his/her product, profits, or life, specifically constitutes a violation of § 924(c)." Id. at 3 (quoting United States v. Sloley, 19 F.3d 149, 153 (4th Cir. 1994) and referencing United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002)). The government further argues that defendant should be prohibited from arguing defenses of justification or necessity. Id. at 4-6.

The defense opposed the government's motion. See ECF No. 72. In their opposition, the defense argues the factual circumstances of the case allow for the defense of justification or necessity, and the government's case law predates both a relevant amendment to the

21

charged offense and the shifting landscape of the Second Amendment. The defense further argues that the circumstances underlying defendant's possession and discharge of the firearm are directly relevant to the government's burden of proof for Count IV. Additionally, the defense argues the government's sought limitation is overbroad.

The government replied in support of its motion. See ECF No. 85. The government argues the court is bound by the higher courts regarding whether or not the government's case law has been undermined, and thus, as the defense cites no authority that the case law has been undermined, the defense's argument has no merit. Id. at 1-2. The government further argues that, putting aside the case law, defendant will "never be able to overcome the second element of the necessity" or justification defenses, as "defendant was a marijuana trafficker who always carried a firearm," and thus had put himself into a reckless situation where criminal conduct was possible. Id. at 2-3. The government notes, "[t]o be clear, at the moment the defendant answered the door for his regular marijuana customer, while armed with a firearm, the elements for possessing a firearm in furtherance of drug trafficking have been met." Id. at 3.

At the hearing, the court heard argument from both the government and defense as to this issue. The court **GRANTS IN PART** and **DENIES IN PART** the government's motion, ECF No. 64. The court holds that self-defense is not a defense to a § 924(c) charge, and thus defendant is precluded from arguing self-defense as to Count IV in his opening statement. However, as the government's motion sought a broader preclusion of mention of facts supporting self-defense, justification, or necessity at any point at trial, the court holds that the facts of the firearm discharge should be fully presented to the jury, and there shall be

no limitation to presentation of evidence on how the discharge happened and the facts of the discharge. Should it become relevant, the court will address whether a self-defense, justification, or necessity instruction to the jury is warranted at the appropriate time.

ECF No. 65

The government moves to preclude defendant from introducing evidence, as irrelevant under FRE 403, regarding defendant's "apparent physical disabilities, which occurred years after the charged offenses." ECF No. 65 at 1. The events of this case took place in November 2018 and February 2019. The government argues that "over three years" later, in or around May 2022, defendant was involved in a serious motorcycle accident resulting in "the loss of use of his left arm, the loss of a portion of one of his legs, and potentially a traumatic brain injury." Id. at 3. The government argues that introduction of evidence regarding defendant's disabilities, whether in voir dire, opening statements, witness testimony, closing statements, "or at any other point during trial runs the risk of unfair prejudice to the government, confusing the issues, and misleading the jury," thereby making it excludable as irrelevant and prejudicial evidence under FRE 402 and 403. Id. at 4.

In response, the defense asks that the court not rule on this motion pretrial, but address it at trial if it becomes relevant. See ECF No. 74. Defendant agrees that the facts of his accident and injuries are not a defense to any of the offenses charged; however, these injuries, particularly the traumatic brain injury, "may become relevant to explain his presentation…lack of recollection, and the fact that he may be slow to respond to questioning and interrogation." Id. at 1.

The government replied in support of its motion. <u>See</u> ECF No. 84. The government argues defendant has conceded that evidence of his injury is irrelevant to any defense to the counts charged. <u>Id.</u> Should defendant seek to introduce evidence of his injuries in response to issues regarding his testimony, the government argues that defendant should be precluded from doing so if defendant introduces that information himself as it would be improper medical opinion from a layperson. <u>Id.</u> The government argues that should defendant seek to introduce medical testimony from an expert, he must comply with his obligations under Rule 16 regarding disclosure of experts. <u>Id.</u>

At the hearing, the government noted that the parties largely agree—evidence of defendant's disabilities are not part of any defense to the charges in this case, but it is possible that evidence regarding defendant's disabilities may become relevant at trial. The court therefore **GRANTS** the government's motion, ECF No. 65. The court holds that evidence of defendant's disabilities shall not be introduced at trial unless they become relevant. Should they become relevant, the court will deal with the issue at that time.

<u>ECF No. 66</u>

The government moves the court to make a formal inquiry on the record before trial whether defendant has received, and had the opportunity to consider, any plea agreements that were offered by the government in this case, and whether defendant knowingly and willfully chose not to accept any of these plea agreements. <u>See</u> ECF No. 66. The defense did not file a response to the government's motion.

At the hearing, the court conducted a <u>Lafler</u>/<u>Frye</u> inquiry at the request of the government. The government stated that it has presented two plea agreement offers to

defendant, an offer in July 2024 and an offer in February 2025. Defense counsel confirmed that the government's representations regarding the two plea agreement offers were accurate. Defense counsel confirmed that he provided the plea agreements to, and went over the agreements with, his client. Defense counsel also noted that for at least one of the plea agreement discussions with his client, defendant's mother was also present. The court then inquired of defendant if he had received the plea agreements, if his counsel went over the agreements with him, if counsel went over the terms with him, if he asked any questions he had regarding the plea agreements to counsel, and whether his counsel discussed the benefits and drawbacks of the plea agreements with him. Defendant answered each question in the affirmative. Defendant further confirmed that, at this time, he has decided not to take a plea agreement in this case, and seeks to go to trial on all counts.

The court thus **GRANTS** the government's request for a <u>Lafler</u>/<u>Frye</u> inquiry, ECF No. 66.

<u>ECF No. 67</u>

The defense moved to dismiss Count IV (Discharge a Firearm in Furtherance of a Drug Trafficking Crime) as unconstitutional under the Supreme Court's decisions of <u>New York State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, 597 U.S. 1 (2022), and <u>United States v. Rahimi</u>, 602 U.S. 680 (2024). ECF No. 67 at 1. The defense argued that, putting aside the court's discussion of the issue in <u>United States v. Snead</u>, 647 F.Supp.3d 475 (W.D. Va. 2022), the law of the Second Amendment is still in flux, particularly in as-applied challenges. <u>Id.</u> at 1 n.1.

The government opposed the defense's motion. <u>See</u> ECF No. 81. In its opposition, the government stated:

> Mr. Mills presses the remarkable argument that, in light of the Supreme Court's recent decisions in <u>New York State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, 597 U.S. 1 (2022), and <u>United States v. Rahimi</u>, 602 U.S. 680 (2024), he enjoys a constitutional right not merely to carry a gun, but also to shoot someone in the head as part of his marijuana-distribution activities. That's ridiculous. Although the Supreme Court has recognized an individual right to possess and carry certain firearms, "it cannot seriously be contended that the Second Amendment guarantees a right to use a firearm in furtherance of drug trafficking." <u>United States v. Potter</u>, 630 F.3d 1260, 1261 (9th Cir. 2011).

<u>Id.</u> at 1. The government argues that use of a firearm while drug trafficking does not fall within the scope of the Second Amendment's protection as "the Supreme Court has emphasized that the constitutional right is tied specifically to firearm possession and use for <u>lawful</u> purposes by <u>law-abiding</u> citizens," and "as a general rule, constitutional rights do not extend to furthering criminal conduct." <u>Id.</u> at 5, 7 (emphasis in original). The government argues that prohibiting carrying firearms while drug trafficking is consistent with the historical regulation of firearms. <u>See</u> <u>id.</u> at 9-12. The government also notes that limitations on firearm possession in the home still apply post <u>Bruen</u> and <u>Rahimi</u>. <u>See</u> <u>id.</u> at 12-13.

The defense replied in support of its motion. ECF No. 98. In its reply, the defense argues that "[t]he law of the Second Amendment is in flux," and though the Fourth Circuit has rejected as-applied challenges to the felon-in-possession statute, "it has yet to address the viability of either facial or as-applied challenges to the prohibition of 18 U.S.C. §924(c) on the possession of a given firearm in furtherance of drug trafficking, or the discharge of a firearm." <u>Id.</u> at 1 (citing in part <u>United States v. Canada</u>, No. 22-4519, 123 F.4th 159 (4th Cir. 2024)). The defense argues the government has not met its burden to show that the firearm prohibition underlying Count IV is consistent with this country's historical tradition of firearm regulation, in particular, as applied in the present case, where "18 U.S.C. §924(c)… as alleged

in Count Four of the Indictment, 'does infringe upon the right to bear arms for self defense within the home.'" Id. at 2 (internal quotation omitted). The defense distinguishes Count III, which it argues does not appear to infringe upon the right to self defense within the home, from Count IV, which it argues does infringe. See id. at 2-3.

At the hearing, the court heard argument from the government and the defense, and concluded that the court presently lacks sufficient facts before it to rule on defendant's as-applied challenge. The court therefore **TAKES UNDER ADVISEMENT** defendant's motion, ECF No. 67, and will rule on the motion once the government's case at trial is complete.

<u>Conclusion</u>

For the reasons set forth above and on the record at the hearing held on March 31, 2025, it is hereby ordered as follows:

1. The motion to suppress evidence retrieved from defendant's cellphone filed by defendant, ECF No. 57, is **DENIED**;

2. The motion in limine regarding photographs of the deceased filed by defendant, ECF No. 58, is **GRANTED IN PART** and **DENIED IN PART**;

3. The motion for exculpatory evidence filed by defendant, ECF No. 59, is **GRANTED**;

4. The motion to sever Counts I-III from Counts IV-V filed by defendant, ECF No. 60, is **DENIED**;

5. The motion for disclosure of expert evidence filed by defendant, ECF No. 61, is **DENIED AS MOOT**;

6. The motion for early release of Jencks Act material filed by defendant, ECF No. 62, is **DENIED AS MOOT**;

7. The motion seeking an order precluding defendant from referencing potential sentences or punishment filed by the government, ECF No. 63, is **GRANTED**;

8. The motion to preclude argument regarding self-defense and/or defense of justification filed by the government, ECF No. 64, is **GRANTED IN PART** and **DENIED IN PART**;

9. The motion to exclude irrelevant evidence filed by the government, ECF No. 65, is **GRANTED**;

10. The motion for a <u>Lafler</u>/<u>Frye</u> inquiry filed by the government, ECF No. 66, is **GRANTED**; and

11. The motion to dismiss Count IV of the indictment as unconstitutional filed by the defendant, ECF No. 67, is **TAKEN UNDER ADVISEMENT**.

The Clerk is hereby directed to send a certified copy of this order to the defendant and all counsel of record.

It is so **ORDERED**.

Entered: April 3, 2025

Michael F. Urbanski
U.S. District Judge
2025.04.03 10:13:40
-04'00'

Michael F. Urbanski
Senior United States District Judge